**EXHIBIT A**



COPY

AUG - 8 2016

MICHAEL K. JEANES, CLERK
N. MARRUFFO
DEPUTY CLERK

Dennis R. Alexander, Pro Se Plaintiff
DENNIS R. ALEXANDER
6564 Smoke Tree Lane
Paradise Valley, AZ 85253-4128
energyproducers@aol.com
*Pro Se Plaintiff*

**SUPERIOR COURT OF ARIZONA**

**MARICOPA COUNTY**

| | |
|---|---|
| DENNIS R. ALEXANDER, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY, AND AS PERSONAL REP FOR THE ESTATE OF MELVENA ALEXANDER,<br><br>Plaintiffs,<br><br>v.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FF11, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-FF11; QUALITY LOAN SERVICE CORPORATION, a California corporation; WELLS FARGO HOME MORTGAGE, INC., D.B.A. AMERICA'S SERVICING COMPANY; JOHN AND JANE DOES 1-1000, XYZ CORPORATIONS 1-15; ABC LIMITED LIABILITY COMPANIES 1-15; and 123 BANKING ASSOCIATIONS 1-15,<br><br>Defendants.<br><br>Defendants. | No. CV2016-054041<br><br>**FIRST AMENDED COMPLAINT**<br><br>**TO VACATE SUBSTITUTIONS OF TRUSTEE, ASSIGNMENTS OF DEED OF TRUST, and NOTICE OF TRUSTEE'S SALE; VIOLATION OF A.R.S. § 33-420; BREACH OF CONTRACT; BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING; NEGLIGENT PERFORMANCE OF UNDERTAKING; NEGLIGENCE PER SE; UNCONSCIONABLE CONTRACT /CONDUCT; DISCHARGE/PAYMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Dennis R. Alexander, for their Complaint against the Defendants, alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1.     Clyde and Melvena Alexander, Plantiffs father and mother, initially purchased the property at 6564 Smoke Tree Lane, Paradise Valley Arizona 85253-4128 ("the Property") that was built in 1960. Plaintiff lived, occupied and maintained business offices located at the property over the years and after his father's passing in 1998 with

Mrs. Melvena Alexander, Plaintiff's mother whom they worked together in business. Plaintiff is the executor and Personal Representative of the Estate of Melvena Alexander, having inherited the property from his mother after her passing in January 2013 and has been the owner in possession since that time. Plaintiffs interest in the property as Trustor/fee simple owner is based on being the beneficiary of the Beneficiary Deed dated October 27, 2012 and Melvena Alexander's passing on January 5, 2013. Plaintiff is a resident of Maricopa County, Arizona.

2.      Venue is proper in this Court, as the Property is located within its jurisdiction in Maricopa County, Arizona, and because Plaintiff is still in possession of the Property, more fully described as:

LOT THREE (3), LINCOLN DRIVE VISTA, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, IN BOOK 52 OF MAPS, PAGE 46.

3.      At the time of the loan's origination on June 1, 2006, FIRST FRANKLIN A DIVISION OF NATIONAL CITY BANK OF INDIANA ("FFNCB") (a branch of National City Bank, Cleveland, Ohio) is listed as the original Lender (a National Association) on the loan documents, which is then initially a Division of that National Bank. Melvena Alexander, an unmarried woman is listed as the Borrower; the Trustee listed is LANDAMERICA TRANSNATION; MERS or Mortgage Electronic Registration Systems, Inc., is listed as a separate corporation acting solely as the nominee for Lender or Lender's successors and assigns and states that MERS is the beneficiary under the Security Instrument, see "Deed of Trust and Security Agreement" attached on Exhibit 1.

4.      To the best of the Plantiffs' knowledge and belief First Franklin A Division of National City Bank of Indiana or FFNCB then without notice to the Borrower next entered into a Pooling and Servicing Agreement ("PSA") on August 1, 2006, as amended, among HSI Asset Securitization Corporation, as Depositor, First Franklin Financial Corporation, as Mortgage Loan Seller, Wells Fargo Bank, N.A., as Master Servicer,

| | |
|---|---|
| 1 | Securities Administrator and Custodian, and Deutsche Bank National Trust Company, as |
| 2 | Trustee, please see information at the following link: |
| 3 | https://www.sec.gov/Archives/edgar/data/1372799/000114420406040147/v053628_8ka.ht |
| 4 | m . |
| 5 |     5.        On September 5, 2006, to the best of the Plaintiffs' knowledge and belief |
| 6 | then without notice to the Borrower, First Franklin Mortgage Loan ("FFML") Trust 2006- |
| 7 | FF11, HSBC, lead underwriter for HSI Asset Securitization Corporation (Depositor), |
| 8 | Wells Fargo Bank, N.A. (Master Servicer, Securities Administration, and Administrator), |
| 9 | HSBC Bank USA, N.A. (Sponsor), NatCity Investments, Inc. and Blaylock & Company, |
| 10 | Inc., (Co-Managers), First Franklin, a division of National City Bank of Indiana and other |
| 11 | qualified correspondents of National City Bank (Originator), Deutsche Bank National |
| 12 | Trust Company (Trustee), the (Derivative Provider) which satisfies the Derivative Provider |
| 13 | Ratings Requirement, having filed a prospectus dated August 15, 2006 with the Securities |
| 14 | and Exchange Commission, titled "New Issue Term Sheet and Computational Materials" |
| 15 | and further regarding, **Mortgage Pass-Through Certificates, Series 2006-FF11** |
| 16 | **$1,923,547,923 (Approximate, Subject to +/- 10% Variance) First Franklin Mortgage** |
| 17 | **Loan Trust 2006-FF11,** *Issue,* **HSI Asset Securitization Corporation,** *Depositor,* **First** |
| 18 | **Lien Residential Mortgage Loans,** of which Plaintiffs' subject loan became a part |
| 19 | thereof. First Franklin Financial Corporation ("FFFC") acting as seller who bought the |
| 20 | loans from the Originator (FIRST FRANKLIN, A DIVISION OF NATIONAL CITY |
| 21 | BANK OF INDIANA- also Plaintiffs Loan Originator) and other qualified correspondents |
| 22 | of National City Bank then sold them to the Sponsor (HSBC Bank USA, N.A.). The |
| 23 | Sponsor then in turn sold again the Mortgage Loans to the Depositor (HSI Asset |
| 24 | Securitization Corporation) on the ("Closing Date") on or about September 6, 2006 |
| 25 | therein, please see link at: |
| 26 | https://www.sec.gov/Archives/edgar/data/1323260/000114420406037026/v051383_fwp.ht |
| 27 | m . |
| 28 | |

1    6.        Further, on the Closing Date, the Securities Administrator, Wells Fargo
2  Bank, N.A. on behalf of the supplemental interest trust entered into both an interest rate
3  cap agreement and swap agreement with ABN AMRO Bank N.V. Please also see
4  information link at
5  https://www.sec.gov/Archives/edgar/data/1372799/000114420406039030/0001144204-06-
6  039030-index.htm .

7    7.        After the sale of the Plantiffs' subject loan, and to the best of its knowledge
8  and belief from on or about August 1, 2006 via the Pooling and Servicing Agreement
9  ("PSA"), then via Prospectus filings dated August 15, 2006 with Closing Date on or about
10  September 6, 2006 First Franklin Financial Corporation acting as seller who bought the
11  loans from the Originator First Franklin, a division of National City Bank of Indiana and
12  other qualified correspondents of National City Bank, sold them to the Sponsor known as
13  HSBC Bank USA, N.A and the Sponsor then in turn again sold the Mortgage Loans to the
14  Depositor known as HSI Asset Securitization Corporation also on or about the Closing
15  Date September 6, 2006. Wells Fargo Bank, N.A. is Servicer, Master Servicer, Securities
16  Administrator and Custodian, and Deutsche Bank National Trust Company, Trustee. First
17  Franklin Mortgage Loan Trust 2006-FF11, Mortgage Pass-Through Certificates, Series,
18  2006-FF11.

19    8.        Under the terms of the Pooling and Servicing Agreement, it is noted
20  regarding transfer and assignment of each Mortgage:

21          In connection with the transfer and assignment of each Mortgage Loan, the
22          Depositor has delivered or caused to be delivered to the Custodian for the benefit of
23          the Certificate holders the following documents or instruments with respect to each
24          Mortgage Loan so assigned:

25          (i)    the original Mortgage Note bearing all intervening endorsements
26  necessary to show a complete chain of endorsements from the original payee, endorsed in
    blank, "Pay to the order of _____, without recourse", and, if previously
27  endorsed, signed in the name of the last endorsee by a duly qualified officer of the last
28  endorsee;

(ii)     the original Assignment of Mortgage for each Mortgage Loan, in form and substance acceptable for recording. The Mortgage shall be assigned, with assignee's name left blank;

9.     Historical Note 2 – information only: On December 30, 2006 Merrill Lynch Bank & Trust Co., FSB ("MLFSB"), New York, New York acquired First Franklin Financial Corporation ("First Franklin"), San Jose, California, from National City Bank, Cleveland, Ohio.

10.     Historical Note 3 – information only: First Franklin originated primarily subprime mortgage loans for sale in the secondary market. **Backers:** First Franklin partnered with investment banks such as Goldman Sachs and Bank of America to issue securities from its loans, according to financial statements. Other banks, such as Deutsche Bank's HSI Asset Securitization Corporation Trust, pooled First Franklin loans. To make home loans sales more efficient and profitable, banks began making increasing use of a mechanism called "securitization". In a securitization, according to the Permanent Subcommittee on Investigations, United States Senate, a financial institution bundles a large number of home loans into a loan pool, and calculates the amount of mortgage payments that will be paid into that pool by the borrowers. The securitizer then forms a shell corporation or trust, often offshore, to hold the loan pool and use the mortgage revenue stream to support the creation of bonds that make payments to investors over time. For First Franklin, according to the Board of Governors of the Federal Reserve System, in a letter response to MLFSB indicated the documents for the loan sales and securitization transactions included representations and warranties that, if breached, by an exemption under section 23A and Regulation W, would obligate First Franklin to repurchase the loans in certain circumstances. In some cases, MLFSB provided guarantees of First Franklin's performance under these transaction documents ("Guarantees"). Because of the deterioration of the subprime mortgage market, Merrill Lynch & Co. ("Merrill Lynch"), the parent of MLFSB, announced that it would discontinue mortgage operations at First

Franklin in March 2008. Status: CLOSED. In March 2008, First Franklin closed all wholesale and retail loan operations.

11.    On March 29, 2011 then Plantiff Melvena Alexander, an Unmarried Woman, after several attempts to qualify for reduction in mortgage terms and modification requests, and then following some recovery from severe illness requiring hospitalization further effecting economic circumstances that were also effected by increases in the variable rate loan) then entered into a Loan Modification Agreement (Instrument No. 20110482576) attached and listed on Exhibit 3 with Wells Fargo Bank, N.A., noted as acting as lender.

12.    Any entity which is the transferee or holder of the Note, or the assignee of the Deed of Trust, is subject to any and all affirmative claims and/or defenses the Plaintiff could have asserted against FIRST FRANKLIN A DIVISION OF NATIONAL CITY BANK OF INDIANA ("FFNCB") (a branch of National City Bank, Cleveland, Ohio) as the originator of the loan, and First Franklin Mortgage Loan Trust 2006-FF11, Mortgage Pass-Through Certificates, Series, 2006-FF11, and Deutsche Bank National Trust Company ("DBNTC"), as Trustee, and c/o Wells Fargo Bank, N.A., as entity(ies) allegedly in the chain of title.

13.    According to the FDIC, litigants are barred from suing any entity over which the FDIC acts as conservator or receiver, pursuant to 12 U.S.C. § 1821(j). This bar includes not only the assertion of claims for damages, but also the seeking of injunctive or any other affirmative relief. This situation has not existed therefore Plantiff believes the litigants herewith are properly listed.

14.    Defendant Americas Servicing Corporation, a division / d.b.a. of Wells Fargo Home Mortgage, Inc., ("ASC"), has been the servicer of the Note. Even though FFNCB transferred or changed its servicing rights in the loan from initially First American Title to ASC, a division of Wells Fargo Bank, N.A acting as Master Servicer, Securities Administrator and Custodian effective on or about August 1, 2006, Deutche Bank National

1  Trust Company, as trustee, c/o Wells Fargo Bank, N.A., further acting as administrator, is

2  envisioned will establish itself to retain control over this litigation.

3     15.     Defendant Deutsche Bank National Trust Company ("DBNTC"), as Trustee

4  for First Franklin Mortgage Loan Trust 2006-FF11, Mortgage Pass-Through Certificates,

5  Series, 2006-FF11 (the "Trust"), is a special purpose national banking association, formed

6  under the laws of the United States of America, whose business is limited to that of a trust

7  company.  The Trust is governed by, among other documents, a Pooling and Servicing

8  Agreement ("PSA") dated August 1, 2006, as amended, and Rate Swap Transaction letter

9  confirmation Agreement ("RST") dated September 6, 2006.

10    16.     Defendant WELLS FARGO BANK, N.A. administrator, Master Servicer,

11  Securities Administrator, Custodian, etc all., along with the September 6, 2006 RST Rate

12  Swap Transaction Agreement entered into between ABN AMRO Bank N.V. ("ABN

13  AMRO"), and the Supplemental Interest Trust of First Franklin Mortgage Loan Trust

14  2006-FF11 (the "Counterparty"), as represented by Wells Fargo Bank, N.A. not in its

15  individual capacity, but solely as securities administrator ( the "Securities Administrator")

16  of the Supplemental Interest Trust created pursuant to a Pooling and Servicing Agreement,

17  dated and effective August 1, 2006, among HSI Asset Securitization Corporation, as

18  depositor (the "Depositor"), the Securities Administrator, Wells Fargo Bank, N.A. in the

19  additional capacities of servicer, master servicer and custodian, First Franklin Financial

20  Corporation, as mortgage loan seller, and Deutsche Bank National Trust Company, as

21  trustee (the "Pooling and Servicing Agreement"). This Agreement, which evidences the

22  complete and binding agreement between the parties to enter into the Transactions on the

23  terms set forth therein the RST Agreement. And further, regarding a loan modification

24  agreement (providing for step interest rate) entered into with Melvena Alexander, an

25  unmarried woman, with Wells Fargo Bank, N.A. documented as "Lender" of March 29,

26  2011, and then reverting back on the June 22, 2015 Notice of Trustee's Sale to Current

27  Beneficiary being listed as Deutsche Bank National Trust Company, as Trustee for First

28

Franklin Mortgage Loan Trust 2006-FF11, Mortgage Pass-Through Certificates, Series, 2006-FF11, c/o Wells Fargo Bank, N.A., as entity(ies) allegedly in the most recent chain of title.

17.    Martha Sanchez is an Assistant Secretary of Quality Loan Service Corporation who was substituted as Trustee under the Deed of Trust on June 22, 2015, as on record at the Maricopa County Recorder's Office at Doc. No. 2015-0445072. At the time of substitution, Trustee Sanchez acting for Quality Loan Service Corporation noticed that it qualifies to act as a trustee under A.R.S. 33-803(A)(1) in its capacity as a licensed Arizona escrow agent regulated by the Department of Financial Institutions.

18.    At present, there is a trustee's sale pending on August 3, 2016 listed TS No. AZ-15-675637-BF, Order No. 150164531-AZ-VOI. The Defendants may state to re-notice a trustee's sale on the Property during the status and pendency of this potential litigation. Should such a sale be then be re-noticed, Plaintiff will seek to again amend to name any trustee who notices such sale if that trustee is not already a party.

19.    Plaintiff is currently unaware of the identity and capacity of ABC CORPORATIONS 1 through 15, XYZ LIMITED LIABILITY COMPANIES 1 through 15, 123 BANKING ASSOCIATIONS 1-15; 456 DEED OF TRUST TRUSTEES 1-15, and DOES 1 through 15, but will amend the Complaint when their identities have been ascertained. Plaintiff alleges upon information and belief, however, that each and every presently unknown defendant is in some manner responsible for the acts or conduct of other Defendants, or were and/or are responsible for the injuries, damages, and harm incurred by Plaintiff.

///

///

## **FACTS RELATED TO LOAN ORIGINATION**

8

20.     On or about June 1, 2006, Melvena Alexander, an Unmarried Woman entered into an Adjustable Rate Note (the "Note") (attached Exhibit 2 hereto) and Deed of Trust (the "DOT") (attached and listed on Exhibit 1) with First Franklin, a Division of National City Bank of Indiana ("FFNCB") (collectively, the Note and separately the Deed of Trust ("DOT") and Security Instrument may be referred to as the "Loan")). The Plaintiff asserts herewith Mrs. Alexander received a copy of the DOT and Security Instrument (Maricopa County Records #20060741518) and a copy of the Adjustable Rate Note (the "Note") was eventually obtained through historical bankruptcy proceedings.

21.     At the time of Loan origination, Keystone Financial Services, LLC., and FFNCB placed Mrs. Alexander, then an 82-year-old woman, into a Variable Rate Feature via an Adjustable Rate Rider attached to the DOT and Security Instrument, for the purchase of the Property then allowing for a sellers equity contribution as a down payment utilized by the buyer in the amount of $365,000. Keystone Financial Services, LLC received a loan origination fee of $6,100 for putting Mrs. Alexander into that Loan.

22.     The DOT shows based on a "Note" or "Loan" meaning debt that is evidenced by a Note plus interest, any prepayment charges and late charges due under the Note, and all sums due under the Security Instrument, plus interest. It describes therein the Security Instrument, Section 17. Borrowers Copy: that Borrower is to be provided one copy of the Note, and of the Security Instrument, and as the Note (the "Adjustable Rate Note") being to the best knowledge and belief of the Plaintiff as having never been received timely, or any verified or any certified properly endorsed assignments, and further containing Non dated Dual Endorsements by the same person which calls himself "Closer" (See attached Exhibit 2, page-5) interestingly one for First Franklin Financial Corporation and another for First Franklin a Division of National City Bank of Indiana (questioning this as an Assignment?) calling into question the validity of the Note that there is an initial principal balance of $610,000 due to the substantiation in the definitions listed in the Deed of Trust, item (F) "Note"... and other records including the Good Faith Estimate of

Settlement Charges. FFNCB is listed as the Lender on the Deed of Trust and Security Instrument. The Borrower is identified as Melvena Alexander, and Unmarried Woman. An copy of the Deed of Trust and Security Instrument is attached hereto as Exhibit 1 however[1]

23. The Note states that:

    (a) "Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder;'"

    (b) if the borrower is in default, "the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me...."

    (c) "[i]f the Note Holder has required me to pay immediately in full ... the Note Holder will have the right to be paid back by me...."

    (d) "[i]n addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the 'Security Instrument') ... protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note." *See* Note, attached on Exhibit 2.

24. The Security Instrument states that:

    (a) "Interest in the Property" means any legal or beneficial interest in the Property, including but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser;"

    (b) if the borrower is in default, "under the Security Instrument the Lender shall give notice to the Borrower prior to acceleration following Borrowers' breach of any

[1] Plaintiffs do not admit that there exists a true and accurate copy of the Note. Until Plaintiff has been provided a copy of the Note with all endorsements, and given the opportunity to examine the original Note, Plantiff does not admit the debt or the validity of same.

covenant or agreement in the Security Instrument. The notice shall specify (i) the default,; (ii) the action required to cure the default; (ii) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured,; and (iv) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the property.... ."

(c) Under the Security Instrument, "The Notice shall further inform the Borrower of the right to reinstate after acceleration and the right to bring court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale ... ."

25.    The Security Instrument Adjustable Rate Rider ("ARR") FFNCB presented to Melvena Alexander to sign with a "Note" being a "Variable Rate Feature" type. Essentially stated per the Adjustable Rate Rider attached to the Security Instrument documents thereon describes on its face "THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWERS INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY." Therefore the ARR indicates there would be an initial interest rate of 7.75% per month with provisions and changes to the monthly interest rate essentially/summarily by adding 5.3750% to the then current index. The ARR describes limits on Interest Rate Changes which summarily indicate interest rates to be never greater than 13.750% nor less than 7.75% with the first change date to be not greater than 10.750%. This would cause, and did cause eventually, a drastic increase in monthly payment beyond the borrower's means.

26.    Plaintiff was not present with Mrs. Alexander when the loan documents were signed. To the best of Plaintiffs knowledge and belief, and as the son of Mrs. Alexander, a copy of the Note was never provided to Mrs. Alexander timely, but Plaintiff has obtained a copy by other means, and confirmed viable copies of the Deed of Trust and Security

11

Instrument and its various riders, which are available from Maricopa County Recorder's Office.

27.     The DOT also identifies FFNCB as the Lender, and Melvena Alexander, an Unmarried Woman, as the Borrower and Trustor. MERS "acting solely as a nominee for "Lender" and "Lenders Successors and Assigns" is named as the beneficiary on the DOT under the Security Instrument. The DOT is dated May 26, 2006, and was recorded in the Maricopa County Recorder's Office at Document No. 2006-0741518 on June 1, 2006, allegedly securing the original principal amount of $610,000.00.

28.     FFNCB's handling of the DOT confirms that FFNCB's only goal was to originate the Loan on whatever terms expedient, as its plan was to immediately sell the note or loan and generate a quick profit. A copy of the DOT is attached as Exhibit 1.

29.     Shortly after closing the FFNCB loan with Melvena Alexander on June 1, 2006, in a Free Writing Prospectus dated August 15, 2006 (to Prospectus dated April 3, 2006) $1,882,192,000 (Approximate), Mortgage Pass-Through Certificates, Series 2006-FF11 First Franklin Mortgage Loan Trust 2006-FF11 Issuing Entity, HSI Asset Securitization Corporation, Depositor, HSBC Bank USA, National Association, Sponsor and Seller, and Wells Fargo Bank, N.A. Servicer and Master Servicer, whereas it states in the prospectus, "Immediately upon or subsequent to origination or the Mortgage Loans, the Originator (FFNCB) sold the Mortgage Loans to First Franklin Financial Corporation (the "Mortgage Loan Seller") and the Mortgage Loan Seller, in turn, sold the Mortgage Loans to the Sponsor (HSBC Bank USA, National Association) under the Master Mortgage Loan Purchase and Servicing Agreement. See *Assignment of the Mortgage Loans*" in this free writing prospectus." This prospectus can be found at the following link. https://www.sec.gov/Archives/edgar/data/1323260/000114420406034265/v050577_fwp.htm

30.     The DOT, a "Fannie Mae/Freddie Mac UNIFORM INSTRUMENT":

(a) requires the Lender to give the Trustor (i.e., the Plaintiff) 30 days' notice of

12

1 default before accelerating the Note balance;

2 (b) requires that the Lender give the Trustee written notice of the occurrence of an
3 event of default and of Lender's election to cause the Property to be sold, before the
4 Trustee may initiate a sale;

5 (c) imposes a duty on the Lender to release the DOT "[u]pon payment of all sums
6 secured by this Security Instrument....";

7 (d) secures to Lender (*not the beneficiary*) (i) the repayment of the Loan, and (ii)
8 the performance of borrowers' covenants and agreements under the DOT and Note; and

9 (e) states that if applicable law is silent on whether the parties may agree to
10 something by contract, "such silence shall not be construed as a prohibition against
11 agreement by contract."

12 *See* DOT, Exhibit 1, Section 16.

13 31. MERS is listed as beneficiary under the DOT solely for the purpose of
14 avoiding recording an assignment of the DOT each time the Loan was purportedly
15 sold/assigned/transferred. The DOT was given MERS MIN No. 100425240008296961.

16 32. It is not known if MERS takes possession of notes and whether it took
17 possession of Plaintiff's Note. MERS is listed as a nominee for Lender and Lenders
18 Successors and assigns, and noted that MERS is the beneficiary under the Security
19 Instrument. It is not known if the Note was ever or never endorsed to MERS, nor ever or
20 never endorsed in blank and held by MERS. MERS may never had any financial interest
21 in the Loan; MERS does not originate loans or lend money.

22 33. The deed of trust statutes define "beneficiary" as "the person named or
23 otherwise designated in a trust deed as the person for whose benefit a trust deed is given,
24 or the person's successor in interest." A.R.S. § 33-801(1). The person for whose benefit a
25 trust deed is given, is the Lender/Note Holder. *See* Exhibit 1 ("This Security Instrument
26 secures to Lender: (i) the repayment of the Loan....").

27 34. MERS was never the true beneficiary under the DOT.

28
13

35.     MERS requires those which use MERS' database to be members of MERS. Only those taking specialized training, who are officers of member companies, are authorized to be certifying officers of MERS. Only certifying officers of MERS may sign documents on behalf of MERS.

36.     On March 29, 2011 then Plantiff Melvena Alexander, an Unmarried Woman, after several attempts to qualify for reduction in mortgage terms and several attempts and modification requests, and then as prior noted that following some recovery from severe illness in December 2010 through January 2011 requiring hospitalization further effecting her economic circumstances then entered into a Loan Modification Agreement she had started long prior to her illness onset, once again asserting to amend the Note, and the existing Security Agreement, together, (the "Loan") providing for step interest rate or 3.5% for the first two years commencing on May 1, 2011, and thereafter, 4.5% for the term of the modification until its maturity on July 1, 2036, see Instrument No. 20110482576 attached on Exhibit 3 with Wells Fargo Bank, N.A., listed acting as lender.

37.     After Mrs. Alexanders recovery she had stabilized but was experiencing difficulty maintaining the stabilization, and once again affecting finances resulting in the loan becoming then delinquent and back in foreclosure as of September 9, 2012 and attached herewith as Exhibit 4. With her health experiencing further declining, after difficult consideration early in December of 2012 decided to filed a Chapter 13 Bankruptcy. Mrs. Alexander then very ill with Pneumonia entered the hospital again in late December 2012.

38.     On January 5, 2013, Melvena Alexander passed away shortly before her 89th birthday. At the time of her death, just over five and one half years after original loan initiation, Mrs. Alexander also had dementia. The Plaintiff is executor and personal representative for the Estate of Melvena Alexander, and inherited the Property.

39.     Plaintiff Dennis R. Alexander addressed the courts for the Chapter 13 Bankruptcy as then becoming personal representative for the Estate of Melvena Alexander.

1    The Bankruptcy (Case No. 2-12-Bk-26145-SSC) was then wrapped up through several
2    hearings and then dismissed in late May early June of 2013.

3    40.    Plaintiff Dennis R Alexander brought the property loan current on June 20,
4    2013 in the amount of $67,433.67 made payable to ASC attached hereto as Exhibit 5 and
5    commenced to undertake assumption and modification processes which are later discussed
6    herein.

7    41.    As of July 27, 2016, the MERS ServicerID system shows the servicer of this
8    Loan is Wells Fargo Bank, N.A., d/b/a America's Servicing Company, and that the Loan is
9    "inactive" on the MERS system. When Plaintiff attempted to access the page providing
10   "investor" information, www.mers-servicerid.org the investor was again listed as Wells
11   Fargo Bank, N.A., d/b/a America's Servicing Company. A copy of the MERS ServicerID
12   system page with the alleged servicer and investor information on this Loan is attached
13   hereto as Exhibit 6 and 7, respectively.   This information is false; The June 22, 2015
14   Notice of Trustee's Sale shows the Current Beneficiary listed as Deutsche Bank National
15   Trust Company, as Trustee for First Franklin Mortgage Loan Trust 2006-FF11, Mortgage
16   Pass-Through Certificates, Series, 2006-FF11, c/o Wells Fargo Bank, N.A., as entity(ies)
17   allegedly in the most recent chain of title.

18   **DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR**
19   **FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FF11, MORTGAGE**
20   **PASS-THROUGH CERTIFICATES, SERIES, 2006-FF11**

21   42.    The Defendants have revealed: After the sale of the Plantiffs' subject loan,
22   and to the best of its knowledge and belief from on or about August 1, 2006 via the
23   Pooling and Servicing Agreement ("PSA"), then via Prospectus filings dated August 15,
24   2006 with Closing Date on or about September 6, 2006. First Franklin Financial
25   Corporation acting as seller who bought the loans ("First Assignment") from the
26   Originator First Franklin, a division of National City Bank of Indiana and other qualified
27   correspondents of National City Bank, sold them to the Sponsor known as HSBC Bank

28

USA, N.A ("Second Assignment") and the Sponsor then in turn again sold the Mortgage Loans to the Depositor known as HSI Asset Securitization Corporation ("Third Assignment") also on or about the Closing Date September 6, 2006. Wells Fargo Bank, N.A. is Servicer, Master Servicer, Securities Administrator and Custodian, and Deutsche Bank National Trust Company, Trustee. First Franklin Mortgage Loan Trust 2006-FF11, Mortgage Pass-Through Certificates, Series, 2006-FF11.

43.     The PSA was entered into by HSI Asset Securitization Corporation (the "Depositor"), First Franklin Financial Corporation (the "Mortgage Loan Seller"), Wells Fargo Bank, N.A. (the "Servicer", "Master Servicer", "Securities Administrator" and "Custodian"), and Deutsche Bank National Trust Company (the "Trustee"). The PSA was filed with the Securities and Exchange Commission on September 28, 2006, with an 8-K/A.[2]

https://www.sec.gov/Archives/edgar/data/1372799/000114420406040147/v053628_ex4-1.htm

44.     The PSA states that the Seller transfers to the Depositor, without recourse, all the interest of Seller in each Mortgage Loan, and that Seller shall deliver by the Closing Date of September 6, 2006, the Mortgage File for each Mortgage Loan, to the Depositor or Trustee.  See PSA, and definition of "Closing Date" on page 19 of the PSA.

45.     The Depositor also transferred to the Trustee, "for the benefit of the Certificateholders, without recourse, all the interest of the Depositor in the Trust Fund...." Depositor was also required to deliver, in connection with the transfer of each Mortgage Loan, "for the benefit of the Certificateholders," the original Mortgage Note, endorsed in

---

[2] The entire document can be found at
https://www.sec.gov/Archives/edgar/data/1372799/000114420406040147/v053628_ex4-1.htm

16

blank without recourse, and the original Mortgage along with an executed assignment of the Mortgage together with any interim recorded assignments.

46.     The related Assignment of Mortgage to MERS has been duly and properly recorded, or has been delivered for recording to the applicable recording office.

47.     Book-Entry Certificates shall at all times remain registered in the name of the Depository or its nominee and at all times: (i) registration of the Certificates may not be transferred by the Securities Administrator except to another Depository; (ii) the Depository shall maintain book-entry records with respect to the Certificate Owners and with respect to ownership and transfers of such Book-Entry Certificates; (iii) ownership and transfers of registration of the Book-Entry Certificates on the books of the Depository shall be governed by applicable rules established by the Depository; (iv) the Depository may collect its usual and customary fees, charges and expenses from its Depository Participants; (v) the Securities Administrator shall deal with the Depository, Depository Participants and indirect participating firms as representatives of the Certificate Owners of the Book-Entry Certificates for purposes of exercising the rights of holders under this Agreement, and requests and directions for and votes of such representatives shall not be deemed to be inconsistent if they are made with respect to different Certificate Owners; and (vi) the Securities Administrator may rely and shall be fully protected in relying upon information furnished by the Depository with respect to its Depository Participants and furnished by the Depository Participants with respect to indirect participating firms and persons shown on the books of such indirect participating firms as direct or indirect Certificate Owners.

48.     The transfer of the Mortgage Loans was to occur on or before the Closing Date of September 6, 2006.

49.     The Trustee: Deutsche Bank National Trust Company, a national banking association, and its successors in interest and, if a successor trustee is appointed hereunder, such successor.

17

50.     "Certificateholder or Holder" is defined With respect to a Book-Entry Certificate, the Person who is the beneficial owner of such Book-Entry Certificate.

51.     The Certificateholders of the Trust are therefore the Note Holder/Lender under the Note and DOT.

52.     "Mortgage Loan" is defined in the PSA an individual Mortgage Loan that is the subject of this Agreement, each Mortgage Loan originally sold and subject to this Agreement being identified on the Mortgage Loan Schedule, which Mortgage Loan includes, without limitation, the Mortgage File, the Scheduled Payments, Principal Prepayments, Liquidation Proceeds, Subsequent Recoveries, Condemnation Proceeds, Insurance Proceeds, REO Disposition proceeds, Prepayment Charges, and all other rights, benefits, proceeds and obligations arising from or in connection with such Mortgage Loan, excluding replaced or repurchased Mortgage Loans.

53.     "Mortgage File" is defined in the PSA as the mortgage documents including but not limited to the original Note, original Mortgage, and assignments, credit reports, residential loan applications, surveys, etc all.

54.     "Trustee" is defined as Deutsche Bank National Trust Company.

55.     The PSA is silent on legal jurisdiction.

56.     The MERS ServicerID which claims that Wells Fargo Bank, N.A., D.B.A. Americas Servicing Company or "Deutsche Bank National Trust Company as Trustee" is the "Investor" or "Beneficiary" on the Loan, is false.

57.     On a June 16, 2009 Corporate Assignment of Deed of Trust (attached on Exhibit 2-1) there are multiple enforceability issues including, 1) MERS supposedly signs it as "nominee." A nominee has NO LEGALLY ENFORCEABLE INTEREST in anything that it can assign therefore the Assignment is void 2) Jennifer Hamlin is not an Assistant Secretary for MERS and she is not a Certifying Officer for MERS. Plaintiff understands that at the time she worked for Tiffany & Bosco ("T&B"), and Paula Gruntmeir also a T&B employee (the notary); 3) the Assignment purports to assign the Note but MERS

never had the Note and cannot assign it; 4) the text of the Assignment states that DBNTC's "Attorney in fact" Wells Fargo Bank, N.A. (WFB) is assigning the DOT, however it is signed by MERS as nominee so the Assignment is internally inconsistent and is therefore it is void.

58.     On the June 16, 2009 Substitution of Trustee (attached on Exhibit 2-2) NOTE THIS IS DATED JULY 16, 2009 so there is a date problem, it was recorded June 16, 2009 and so date is herewith noted. This document repeats the problems from the Assignment, as Mark S. Bosco of T&B appoints himself, purporting to sign under a limited Power of Attorney, but the signer is listed as DBNTC as Trustee by its attorney-in-fact WFB and so Mark S. Bosco of T&B would have to produce a Limited Power of Attorney appointing him attorney in fact for WFB, and WFB would have to produce a Power of Attorney showing it is attorney-in-fact for DBNTC as Trustee. It is alleged based on this info & belief that these documents do not exist, and also that the Substitution is void because it depends for its enforceability on the Assignment, which is void.

59.     In the June 15, 2009 Notice of Trustees Sale (attached herewith for reference on Exhibit 2-2) 6-15-and recorded June 16, 2009 is based on the void assignment and void substitution. This NTS improperly and incompletely lists the beneficiary as "Deutsche, First Franklin 2006-FF11/WF." That is T&B error as T&B, they are supposed to properly list the beneficiaries name and beneficiaries address, and not to be in care of the servicer.

60.     In a relatively larger issue, the Loan modification agreement dated as of May 20, 2011, signed by Melvena Alexander acknowledged as of April 4, 2011 (please see Exhibit 3, "Modification Agreement" recorded on June 9, 2011, attached herewith and the "Cancellation of Trustees Sale" on Exhibit 2-4 recorded prior thereto on April 22, 2011), says that WFB is the lender. Servicers are then stating that WFB is Lender and WFB signed and recorded this.

61.     In an April 5, 2012 Second Assignment "Corporate Assignment of Deed of Trust" recorded on April 10, 2012 (attached herewith on Exhibit 3-1) MERS as nominee

AGAIN purports to assign DOT to DBNTC as Trustee. MERS cannot assign anything as a nominee (noted above), so this is void. Plaintiff would assert that Theresa Larson in Iowa quite possibly works for WFB. MERS is not based as far as we know in Iowa, therefore Theresa Larson we believe is not an authorized Certifying Officer for MERS, and therefore this second Corporate Assignment of Deed of Trust is void. Plaintiff notes that it believes MERS cannot AGAIN assign what it already assigned back in 2009 and therefore asserts that any interest it had is gone, so this assignment is VOID. Also this purports to assign "all moneys now owing...." which is a void assignment because of the fact that MERS never had any interest in the money owed. Additionally this is void Plaintiff believes as WFB is supposedly the Lender per modification agreement and therefore beneficiary and Lender must be one and the same entity, so MERS is not Lender, nor is DBNTC as Trustee, according to all the detail and information documented in the second Corporate Assignment of Deed of Trust.

62.     Further do the above hereinabove listed facts the August 31, 2012 Notice of Substitution of Trustee recorded on September 6, 2012 (listed on Exhibit 3-2 attached) to 1st American Title Insurance Company is void because it depends for its validity on prior Assignment and both Assignments are void as alleged and listed herein above. Now WFB claims just to be servicing agent, when in May 2011 (please see Exhibit 3) it claimed to be the Lender.

63.     Plaintiff believes further therefore a Trustees Sale Notice (NTS) of September 7, 2012 (attached on Exhibit 4) would also be void because the 2012 Substitution is void, and 1st American Title Insurance Company cannot legally have set a sale. Also the NTS again is claiming DBNTC as Trustee and is beneficiary when as of May 2011 (noting Exhibit 3) claimed WFB Lender (further noting Lender and beneficiary must be the same under ARS 33-801(1)).

64.     Plaintiff again notes his interest in the property as Trustor/fee simple owner is based on being the beneficiary of the Beneficiary Deed dated October 27, 2012 and Melvena Alexander's passing on January 5, 2013.

65.     In addition to the above herein, the January 10, 2014 Substitution of Trustee (see Exhibit 5-1 hereon attached) to Quality Loan Service (QLS) by WFB recorded as of January 21, 2014 as servicer for DBNTC as Trustee is void, because DBNTC as Trustee is not the true beneficiary because both Assignments above discussed and noted are void, and also in May 2011 whereas WFB claimed to be Lender (Exhibit 3 referenced).

66.     The February 25, 2014 NTS (referenced by Exhibits 5-1, 5-2, 5-3 attached), the September 16, 2014 NTS (referenced by Exhibits 5-4 and 5-5 attached) and the June 19, 2015 NTS (referenced by Exhibit 9 attached) as all three noticed by QLS, that all three are void due the Substitution listed just above is void so QLS cannot legally set a sale. Also because document noticed says DBNTC as Trustee is Beneficiary, which it is not because of two void Assignments listed above and WFB claiming to be Lender as of May 2011

67.     On September 4, 2009, attorneys for DBNTC filed a Petition in Orange County Superior Court in California, case No. 30-2009-00300317-PR-TR-LJC. In that Petition, DBNTC confesses that "[w]ith few exceptions, the Trustee does not know the names and addresses of the beneficial owners of the Securities [backed by pools of residential mortgage loans], who can trade or otherwise transfer their ownership interests at any time without affecting the registered ownership of the Securities." The beneficial owners of the Securities, according to the DBNTC, are mutual funds, insurance companies, state and local governments, federal government-sponsored entities, "and other investors residing throughout the United States and throughout the world." A copy of the Petition of Deutsche Bank National Trust Company is attached hereto as Exhibit 8. *See* Petition ¶¶ 3, 4.

1 ///

2 ///

3   68.   The DBNTC Petition lists the Trust at issue here, as one of the Trusts at issue

4 in the Petition. Accordingly, even the Trustee of the Trust, DBNTC, has no idea who the

5 investors are, who are potential Note Holders with the right to enforce the Note. *See*

6 Petition Exhibit 8.

7

8                                    **LOAN MODIFICATION ATTEMPTS**

9   69.   After Plaintiff Dennis R Alexander brought the property loan current on June

10 20, 2013 in the amount of $67,433.67 made payable to ASC attached hereto as Exhibit 5.

11 Upon delivery of the payment Plaintiff at the encouragement of ASC and Wells Fargo

12 began Assumption and Modification processes to both fully assume the non qualifying

13 loan and initiate modification processes to a lower interest rate preferably as the additional

14 debt was a significant undertaking in its present form and Plaintiff wanted to keep the

15 property for family, sentimental, and business purposes.

16   70.   Upon initiating the processes, the ASC / Wells Fargo processing teams

17 indicated it would be an expedient process, however upon returning information for the

18 Non Qualifying Assumption and modification docs, one of the pages for the Assumption

19 set was lost which began serious delays, which became a starting over and fraught wtih

20 stall tactics by the ASC / Wells Fargo team, and later then rejected. Plaintiff again in effort

21 to keep the property as business offices which has been active for years there in separate

22 quarters, plus the sentimental value, needed to reduce the mortgage payment to an

23 estimated 2% loan to accommodate feasibility for being able to handle requirements for

24 finances and other business and personal priorities and considerations. The attempt was

25 unsuccessful. Plaintiff was told in late 2013 that President Obama had changed the rules

26 for modifications and assumptions which would affect assumption of the loan and other

27 processes.

28

1    71.     Receiving promotional materials and again being encouraged via discussions
2 with ASC Wells Fargo then in early 2014 Plaintiff submitted for another modification and
3 assumption noting the rules had again changed. Again after submission of all materials and
4 completing all requests then by March of 2014 modification was denied based on the loan
5 not being current to complete the assumption process. Plaintiff again discouraged then
6 brought the loan current on April 29, 2014 by bank wire in the amount of $49,215.

7    72.     Again having attempted to gain traction on processes for modification and
8 assumption, with the loan falling behind late 2014 Plaintiff brought the loan fully current
9 on January 29, 2015 by bank wire in the amount of $47,428.09.

10   73.     In March, April and May 2015 Plaintiff receive several correspondence
11 letters once again presenting a positive outlook to submit for a modification and
12 assumption process. Plaintiff once again began the process which became grueling in
13 every detail but was hopeful this time would bring an approval, and finally the assumption.
14 After some three to five months the process was denied right at the end of completion
15 stages to move to trial plan for unknown reasons and during that period on June 22, 2015
16 the loan had gone back into foreclosure (see Exhibit 9) which became suspended for a
17 period of time during these processes until once again modification and assumption was
18 denied.

19   74.     Thereafter in November and December 2015 new materials came once again
20 via mail indicating assistance was available for modification and or other assistance
21 /process. Plaintiff reluctantly called back in and after another encouraging discussion with
22 Wells Fargo via ASC Mrs. Tina Hawkins in the Home Affordable HAMP or RMA
23 department oversight started what would be the most significant attempt to initiate and
24 complete a dual modification and assumption process. The process and re entry via
25 submission of all paperwork and data was accomplished in December 2015 and early 2016
26 and appeared to have moved forward this time along with the dual assumption and without
27 being current on the loan and in late March early April of 2016 was finally approved for a

28

final submission and decision by the underwriter. The decision was rendered a denial by the underwriter on approximately April 25, 2016 which assessed the Plaintiff had made too much income to qualify for the HAMP program, but offered an appeal period of 30 days. Plaintiff submitted an appeal on May 21, 2016. The appeal which was believed to support meeting the guidelines for the modification process, and the reasons and full support documents, and hardship updates, and why the calculations should be carefully reviewed again, but was again some two weeks thereafter denied stating the review indicated there was no change in Plaintiffs circumstances per the appeal review again by underwriters, even though Plaintiff provided support. After being somewhat mystified to the response, then when inquiring why Plaintiff could not even meet the new Streamline HAMP program it was indicated that the loan must be assumed for that program to be utilized. Plaintiff being surprised again then reiterated the several times attempted to accomplish the fully non qualifying loan assumption process for this fully assumable non qualifying loan and noted especially all the times when the loan was current and not in default submissions were made, and again Plaintiff was told we can't help you..

75.     Defendants *again*, in July, 2016, upon a call by Plaintiff to request to see if he could give the process one last try, was encouraged by Defendants to apply the one last time for a HAMP loan modification based on a change in circumstances. Plaintiff *again* submitted all documents requested to be sent to the re entry team and call to check in a few days as to the status. Upon a status check approximately July 7, 2016, defendants declined the application at the re entry level and other levels including supervisory and the reason given to Plaintiff from spending several hours over several days calling was, "The Investor will not do any modifications", and or "there has been no change in your circumstances", etc. of which was debated. Plaintiff made the comment to one or more defendants that it was beyond reason just why the Investor or Defendants then would be in effect ultimately so misleading for almost three years as to availability of the processes that were advertised, and promoted, and of course discussed undergoing so many work efforts and so many

times.

**LOAN DOCUMENTATION CHANGES AND FORECLOSURE ACTIVITY**

76.     As sophisticated financial service providers, all Defendants knew the terms of the Note and DOT and the law; that MERS could not legally be the true beneficiary and never possessed the Note, and that therefore the representations in the First Assignment regarding MERS' transferring the Note and DOT were knowingly false.   The First Assignment is void as a matter of fact.

77.     The First Substitution is also void, because it depends, for its legality, on the validity of the First Assignment, which is void.

78.     Under A.R.S. § 33-808(C)(5), the NTS must contain the name and address of the beneficiary.  The NTS prepared and recorded by QLS, see attached on Exhibit 9 and pursuant to which Defendants then sought to foreclose on Plaintiff's home, claimed that "DBNTC" was the beneficiary.  The Defendants knew that "DBNTC" could not be the true beneficiary as the First Assignment was invalid and void, and the Loan had been sold into the Trust, making the Certificateholders of the Trust, the only true beneficiary and Note Holder/Lender. To be a true beneficiary, that entity must also be the Note Holder and Lender; only that entity can be secured by the DOT.

79.     All Defendants, as sophisticated financial service providers, of the conflicting information as to the true beneficiary; the representation that "DBNTC" was the beneficiary, placed in the recorded NTS, was knowingly false.

80.     The Lender never notified QLS in writing of an alleged default and of the Lender's election to foreclose on the Property, which is required under the DOT.  QLS was not properly appointed Trustee under the DOT, and had not received any written instruction from the Lender to regarding default or election to foreclose.   QLS was therefore not the agent of the Lender.  The First NTS is void.

81.     Because the First Assignment is invalid, the First Substitution which depends on the validity of the First Assignment is invalid as a matter of fact, and the First NTS,

25

which depends on the validity of the First Assignment and the First Substitution, is also invalid.

82.     Further, failure of QLS to confirm a default through the only entity which can declare a default, the Note Holder/Lender, and the failure to provide the identity of the true beneficiary and the beneficiary's address, violates Arizona statutes. *See, e.g.,* A.R.S. § 33-807(A); 33-808(C)(5).

83.     The NTS is void because: (1) QLS never received a writing from the Lender declaring a default and electing to foreclose, a condition precedent to initiating foreclosure; (2) the NTS is not signed by an individual with legal authority to set a Trustee's Sale on behalf of the Lender/Note Holder, or even on behalf of DBNTC or QLS; (3) QLS was not legally appointed Trustee; (4) the First Assignment upon which the NTS depends is void and invalid; (5) the Trustor never received a writing from the Lender giving her 30 days' notice to reinstate the Loan; (6) it violated A.R.S. §§ 33-808(C)(5), 33-807(A).

84.     Under A.R.S. § 33-809(C), the Statement of Breach or Non-Performance must be signed by the beneficiary or its agent. The Statement of Breach or Non-Performance is signed by no one, but Martha Sanchez name is typed in for QLS "as agent" of DBNTC. QLS claimed that the beneficiary elected to foreclose, but in fact QLS never received such an election from the true beneficiary and Lender. QLS was not even the legal agent of DBNTC as Trustee for First Franklin Mortgage Loan Trust 2006-FF11, Mortgage Pass-Through Certificates, Series 2006-FF11, in any event. QLS claims that there was a breach of the Trust Deed, consisting of a payment default in installments of principal and interest, and other amounts. This Statement of Breach is void and invalid, because QLS was not the agent of the true beneficiary, which must also be the Note Holder/Lender, which entity never wrote to QLS and declared a default and elected to foreclose.

85.     No Defendant can legally initiate a trustee' sale without Plaintiff's receiving a writing from the Note Holder/Lender giving her 30 days to cure any alleged default, and without the Lender's writing to the trustee of the DOT, declaring a default electing to

26

1  foreclose on the Property. Failure to satisfy these conditions precedent will be a breach of
2  Note and DOT, and a violation of Arizona statute. A.R.S. § 33-807(A).
3  ///
4  ///
5  ///
6  ///
7  ///

10  **SERVICING TRANSFERS OF THE LOAN**

11  86.    The identity of the true Note Holder/Lender with entitlement to enforce the
12  Note and DOT, if any, is unknown; the Note was to have been endorsed and provided to
13  the Trust in 2006; the DOT has never validly been assigned to the present Note
14  Holder/Lender, if any.

15  87.    None of these Defendants has authority to enforce the Note; no Defendant
16  both possesses the Note and was also **entitled to payment**, as required by the clear
17  contractual terms of the Note.

18  88.    At Loan initiation, the Lender was secured by the DOT. That security has
19  been nullified by assigning the DOT to multiple entities not the Note Holder in violation of
20  the PSA with the result that the Note and DOT are split. An assignment of a deed of trust
21  without the note, is a nullity; the DOT must be released.

22  89.    No Defendant is the true beneficiary and the Note Holder/Lender, therefore,
23  no trustee's sale can be initiated.

24  90.    Any entity which is the transferee or holder of the Note, or the assignee of
25  the Deed of Trust, is subject to any and all affirmative claims and/or defenses the Plaintiff
26  could have asserted against First Franklin A Division Of National City Bank Of Indiana
27  ("FFNCB") as the originator of the loan, or any other legal entity in the true chain of title.
28  ///

27

## COUNT ONE
### DECLARATION RE CONTRACT RIGHTS OF THE PARTIES/LACK OF STANDING TO ENFORCE NOTE AND DEED OF TRUST/VOID ASSIGNMENTS OF DEED OF TRUST, SUBSTITUTIONS OF TRUSTEE, AND NOTICE OF TRUSTEE'S SALE/ VACATE VOID DOCUMENTS
### (ALL DEFENDANTS)

91.     Plaintiff repeats and realleges every allegation above as if fully set forth herein.

92.     Plaintiff seeks a declaration and order from this Court regarding the standing of the Defendants and the rights of the parties with respect to the Note, Deed of Trust, and the validity and enforceability of the Assignments, Substitutions, and NTS.

93.     The Note specifically states that in order to be the "Note Holder," one must have taken the Note by transfer, **and** be entitled to payment. Only the Note Holder/Lender may demand payment, accelerate the balance under the Note, elect to foreclose, and tell the borrower and trustee of the default and its election to foreclose. Only the Note Holder/Lender may enforce the rights under the Note, and *only the Note Holder* is protected from losses by the Deed of Trust. *See* Exhibit 1, and Exhibit 2. The Note Holder/Lender is the only entity which may be the beneficiary under the deed of trust statutes.

94.     The DOT states that if applicable law is silent on a subject, the parties may agree to whatever terms they choose.

95.     The Arizona statutes governing non-judicial foreclosures do not specifically require that a foreclosing entity produce the original note in order to foreclose. The statutes do not prohibit that requirement, either; the statutes are silent on the issue.

96.     The DOT states that only the Lender may send written notice to the trustee of an event of default, and of the election to cause the property to be sold. The deed of trust statutes do not allow the trustee to initiate foreclosure without a default. A.R.S. § 33-807(A).

28

97.     The Note defines the Lender as "anyone who takes this Note by transfer and who is entitled to receive payments under the Note...." Therefore, to identify the Lender, that entity must demonstrate that it took the Note by transfer and that it is entitled to receive payments under the Note.

98.     As fully set forth in, without limitation as listed herein above, the document(s) prepared, signed and recorded by the Defendants, to take Plaintiff's home, and the letters addressed to Mrs. Alexander, or the Estate of Melvena Alexander, do not comply with the terms of the Note and DOT nor with applicable statutes. The Assignments, Substitutions and NTS contain defects which render the documents, as a matter of fact, void, invalid, and unenforceable.

99.     Under the Note and DOT and applicable law, any attempt to initiate another sale or foreclose on Plaintiff without proving status as the Note Holder/Lender and true beneficiary, and otherwise being in compliance with all contract terms, is invalid.

100.     Under applicable law, the Defendants cannot foreclose without complying with the statutory requirements to do so.

101.     If any Defendant/Defendants are found to be parties to the Note or DOT, that/those Defendant/Defendants has/have breached the contracts, and failed to follow applicable statutes and laws, as set forth above.

102.     If the Defendants are found not to be parties or agents of parties to the Note or DOT, as is alleged above, Defendants have no standing to enforce the Loan or initiate or conduct a foreclosure of the Property.

103.     Plaintiffs seek a declaration or an Order from this Court, that pursuant to the Note and Deed of Trust, only the Note Holder/Lender and true beneficiary may pursue foreclosure, and that the Defendants must therefore prove their status as Note Holder/Lender and true beneficiary, before they may be allowed to initiate or conduct a Trustee's Sale.

104.     Plaintiffs seek a declaration or an Order from this Court, that no Defendant is the Note Holder/Lender, nor has any Defendant sought foreclosure as the legal agent of the

Note Holder/Lender, under written direction from the Note Holder/Lender as required by the Note and DOT.

105.     The First Assignment is invalid and void as fully set forth in, without limitation,

106.     The First Assignment demonstrates that MERS was in possession of the DOT, while the PSA states that the Note was in the Trust. Therefore, by the agreement of the parties to the PSA and by agreement of the Lender and MERS as set forth in the DOT, the Note and DOT have been split since at least September 6, 2006, with the Trust possessing the Note and MERS possessing the DOT.

107.     MERS did not possess the DOT as an agent of the Lender; the PSA required that the DOT be assigned to the Trustee and that assignment be recorded, within 30 days of transferring the Note to the Trust. This was not done.

108.     The First Substitution is void and invalid, as fully set forth in, without limitation,

109.     The NTS is void and invalid as fully set forth in, without limitation,

110.     The Second Assignment is void and invalid as fully set forth in, without limitation,

111.     The Third Assignment is void and invalid as fully set forth in,

112.     The Fourth Assignment is void and invalid as fully set forth in,

113.     A note and deed of trust are inseparable. If a note and deed of trust are separated, in that the Note Holder/Lender and the beneficiary of the deed of trust are not the same individual or entity, the note becomes unsecured, when the entities are not principal/agent.

///

114.     The Note and DOT have been separated since on or about September of 2006, and the beneficiary under the DOT is not the principal or the agent of the Certificateholders of the Trust, or the Trust Fund.

115.     The assignment of a deed of trust without a legal transfer of the debt,

30

1 transfers nothing.

2 116. The Defendants having voluntarily separated the Note/debt from the DOT;
3 the DOT secures nothing.

4 117. Defendants seek to enforce the Note and Deed of Trust. Because the Note
5 has been unsecured since on or about September 2006, no Defendant may legally pursue
6 foreclosure pursuant to the Deed of Trust.

7 118. No Defendant has standing to pursue foreclosure, as no one Defendant is
8 both the true beneficiary of the Deed of Trust and also the Note Holder.

9 119. Further, pursuant to the terms of the Note, only the Note Holder can enforce
10 the Note through foreclosure or otherwise.

11 120. Under the Note and DOT and applicable law, any attempt to assign the
12 beneficial interest in the DOT to another, or to enforce the DOT without simultaneously
13 being the Note Holder/Lender, is void.

14 121. At no time, has any Defendant been both the Note Holder/Lender and the
15 true beneficiary of the DOT, simultaneously.

16 122. The Statement of Breach and the Debt Validation Notice are both void and
17 invalid as fully set forth in, without limitation,

18 123. Plaintiff seeks a declaration or Order from this Court that the First, Second,
19 Third and Fourth Assignments, the First Substitutions and the NTS are void and
20 unenforceable, and that these recorded documents must be vacated, cancelled, nullified and
21 rescinded and title cleared of these groundless, false, invalid documents which also contain
22 material misrepresentations, with recordings at the Maricopa County Recorder's Office.

23 124. Plaintiff further seeks a declaration or Order from this Court that no party
24 may notice or re-notice a trustee's sale without proving status as Note Holder/Lender and
25 true beneficiary under the Note and Deed of Trust as affirmed by the Court, and otherwise
complying with the contracts, and applicable law.

26 125. Plaintiff seeks a further declaration or Order from this Court that the Note
27 and DOT require that only the Note Holder/Lender may enforce the terms of the Note and

28

31

accelerate the balance, that only the Note Holder/Lender is protected by the Deed of Trust as security, and only the Note Holder/Lender may initiate foreclosure of the Deed of Trust. Any other result subjects Plaintiff to the danger of multiple liability on the Note, and an endless string of false beneficiaries initiating void and invalid trustee's sales.

126.     Plaintiff seeks a further declaration or Order that no Defendant is the Note Holder/Lender and true beneficiary, that the DOT has been rendered a nullity by separating it from the Note, and that until an entity can prove its status as Note Holder/Lender, no entity may seek to enforce the Note.

127.  Plaintiff is entitled to his attorney's fees and costs arising out of this claim, pursuant to the Note and DOT and A.R.S. § 12.341.01.

## COUNT TWO
## BREACH OF CONTRACT
## (ALL DEFENDANTS)

128.     Plaintiff repeats and realleges every allegation above as if fully set forth herein.

129.     Defendants, as an alleged beneficiary, servicer, trustee, or alleged successor or assign of a party to the Note and/or DOT, are all bound in contractual privity with Plaintiffs.

130.     In pursuing a Trustee's Sale in violation of the terms of the Note and DOT, as set forth in, among other places above, the Defendants have breached the Note and DOT, as well as the statutes which are a part of every contract.

131.     In pursuing a Trustee's Sale in violation of the deed of trust statutes and law as set forth in, among other places, are a part of every contract, the Defendants have breached the Note and DOT.

132.     In pursuing a trustee's sale in violation of the contracts and applicable law, Defendants breached the duty of good faith and fair dealing implied in every contract.

133.     Defendants' breaches of contract caused Plaintiff damages in the form of the concrete and particularized injury of the initiation of foreclosure without performing

32

conditions precedent to a valid sale including failing to receive a declaration of default and election to foreclose from the Lender, acceleration of the Note without authority, negative amortization on the Note, late fees, penalties, accruing interest, trustee's fees, and other fees which would not have been incurred but for the improper initiation of foreclosure, attorney's fees, potential bond funds for an illegal trustee's sale, retention of loan modification consulting and accounting assistance, failed HAMP application attempts, and other damage.

134.    As this matter arises out of contract, Plaintiff is entitled to his attorney's fees and costs incurred, pursuant to the contracts and pursuant to A.R.S. § 12-341.01.

## COUNT THREE
## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
### (ALL DEFENDANTS)

135.    Plaintiff repeats and realleges every allegation above as if fully set forth herein.

136.    Defendants are obligated under the Note and DOT, the First and Second Substitutions, the First, Second, Third and Fourth Assignments, the NTS (see Exhbits 4 and 8), and the common law, to act in good faith and to deal fairly with Plaintiff.

137.    The purpose of this covenant is to guarantee that the parties remain faithful to the intended and agreed-upon expectations of the parties in their performance.

138.    The duty of good faith extends beyond the written words of the contracts.

139.    When a party or parties to a contract manipulate bargaining power to its/their own advantage, injuring the other party, the party/parties with bargaining power breach its/their duty of good faith.

140.    Plaintiff reasonably expected that the entities which would seek to enforce the Loan would be those legally entitled to do so.

141.    Plaintiff reasonably expected that the entities with standing to enforce the Loan or those who appeared and claimed that entitlement, would use good faith and deal fairly in initiating and proceeding with foreclosure.

33

142.     Defendants and/or their agents breached their duty of good faith and fair dealing by, without limitation:

a)      hiding from Plaintiff the identity of the true beneficiary by affirmatively misrepresenting to Plaintiff that the true beneficiary was DBNTC, and c/o Wells Fargo Bank, N.A. through letters and the recording of false documents, and initiating or allowing the initiation of foreclosure without having a writing from the Lender declaring a default and electing to foreclose and without confirming that the Lender had sent Plaintiff the required 30-day notice of default; by allowing parties not the Lender, to masquerade as the party entitled to declare default, accelerate the balance, and instruct QLS to foreclose;

b)      hiding the identity of the true Note Holder/Lender by affirmatively misrepresenting the "investor" of the Loan as "Deutsche Bank" or "Deutsche Bank Trust" or "Deutsche Bank as Trustee" through correspondence to Plaintiff, false recordings, and false designations on the MERS ServicerID;

c)      failing to comply with contractual obligations, including without limitation allowing an entity, not the Note Holder and Lender, to declare a default, to accelerate the debt, and to initiate a foreclosure;

d)      initiating foreclosure without requiring that the Lender notify the Deed of Trust trustee, in writing, that the loan was in default, and of an election to foreclose;

e)      seeking to proceed to Trustee's Sale on clearly invalid documents, i.e., the First and Second Assignments, the First Substitution, the NTS, the Statement of Breach and Debt Validation Notice, as fully set forth in detail above;

f)      knowingly and purposely separating the Note from the DOT thereby rendering the Note unsecured, but attempting to foreclose on the Property or otherwise enforce the DOT nevertheless;

h)      potentially recording groundless, false, and otherwise invalid documents, including the First, Second, Third and Fourth Assignments, and the NTS, which also contain material misrepresentations, clouding title to the Property; and

34

j)    requesting Plaintiff to fill out no less than 4 separate complete HAMP loan modification applications, and in spite of Plaintiff's fully performing bringing the loan current three times, and complying with fully assumable document requests, these Defendants failed and refused to offer Plaintiff a permanent modification, and further failed and refused to timely (or at all) process the three other applications and provide a timely acceptance or declination of the applications.

143.    As a result of Defendants' failure to act in good faith and with fair dealing, Defendants have caused Plaintiff concrete and particularized injury, in the form of a default claimed by the Defendants but not asserted by the Note Holder/Lender, acceleration of the Note, attorneys' fees and costs paid to stop an invalid trustee's sale sought by entities with no standing to do so and without the Defendants' having performed conditions precedent to a valid sale and to pursue an appeal, losses sustained, accrual of default penalties and interest, and other damages, as fully alleged above.

144.    As this claim arises out of the contracts between the parties, Plaintiff is entitled to her attorney's fees and costs incurred in having to bring this claim, pursuant to the terms of the contracts as well as A.R.S. § 12-341.01.


## COUNT FOUR
## VIOLATION OF A.R.S. § 33-420
### (ALL DEFENDANTS)

145.    Plaintiff repeats and realleges every allegation above as if fully set forth herein.

146.    At the time the loan closed on June 1, 2006, the Note gave First Franklin A Division of National City Bank of Indiana, then the Lender and originator, the right to payments.

147.    The Note makes it clear that only one who takes the Note by transfer, **and** who is entitled to receive payments, is the Note Holder.

148.    Numerous parties have come forward, attempting to demonstrate an entitlement to the Property or entitlement to foreclose, through a claimed interest as

35

nominee on the Deed of Trust, as a beneficiary under the Deed of Trust, as a purported Note Holder, "owner" of the Note, creditor, agent of a servicer or beneficiary, a substituted trustee, or other undeclared, unspecified interests.

149.    As fully detailed above, those parties claiming interests were/are MERS, First Franklin Financial Corporation acting as seller who bought the loans ("First Assignment") from the Originator First Franklin, a division of National City Bank of Indiana and other qualified correspondents of National City Bank, Sponsor known as HSBC Bank USA, N.A ("Second Assignment") and the Sponsor then in turn again sold the Mortgage Loans to the Depositor known as HSI Asset Securitization Corporation ("Third Assignment") also on or about the Closing Date September 6, 2006. Wells Fargo Bank, N.A. is Servicer, Master Servicer, Securities Administrator and Custodian, and Deutsche Bank National Trust Company, Trustee. First Franklin Mortgage Loan Trust 2006-FF11, Mortgage Pass-Through Certificates, Series, 2006-FF11. The defective and void nature of each person/entity's claim to the Property is set forth in detail above. Each Defendant and individual or entity has actual knowledge of the defects in the recorded chain of title. Each Defendant has contributed to the cloud currently existing on the title to the Property, represented by the false, groundless and fraudulent documents recorded against the Property, which also contain material misrepresentations.

///

150.    As is fully set forth in allegations above, no Defendant is the true beneficiary under the DOT, as no Defendant is the Note Holder/Lender.

151.    Plaintiff is in jeopardy of multiple liabilities under the Note, because the true Note Holder is unknown. That entity, as well as third parties, could come forward claiming an unsatisfied interest in the Note, and may or may not be subject to Plaintiff's various affirmative defenses and counterclaims. Under the Uniform Commercial Code, if Plaintiff pays the wrong entity, the debt is *not* discharged. Given the cloud on title and the uncertainty surrounding the Note, Plaintiff is entitled to proof of the true Note Holder/Lender, and the true beneficiary if any, to avoid this imminent danger.

36

152. The First and Second Assignments which purport to assign the DOT and the Note are void, as fully set forth in allegations above.

153. The Third Assignment which purports to assign the DOT only are void, as fully set forth in allegations above.

154. The First and any other Second Substitutions are void, as fully set forth in allegations above.

155. The NTS is void, as fully set forth in allegations above.

156. Various Defendants have recorded these void and invalid documents against the Property, without the legal authority to do so. Plaintiff is unable to determine which of the Defendants recorded the documents, but all Defendants potentially have recorded or caused these documents to be recorded. These documents include, but are not limited to, the three to four Assignments, up to two Substitutions, and the NTS.

157. Plaintiff has suffered a distinct and palpable injury from the recorded documents all of which are groundless, potentially contain false claims and/or material misstatements against his Property, in violation of A.R.S. § 33-420. The recorded documents have again very potentially clouded the title which has or may have directly affected the ability to possess, use and sell the Property, as is his right.

158. Plaintiff is entitled to an order from this Court against the Defendants, that the Plaintiff's title be quieted as against these void and invalid recorded documents, and that the groundless and false recorded documents be declared null and void with filings at the Maricopa County Recorder's Office to that effect, and that all Defendants be ordered to prove their status as Note Holder/Lender secured by a valid DOT, before any of them may record any other documents against title.

159. Plaintiff seeks the statutory sum of no less than $5,000, or treble the actual damages caused by the recordings, if any, whichever is greater, plus an award of Plantiffs attorneys' fees and costs, pursuant to A.R.S. § 33-420(A).

**COUNT FIVE**

37

## NEGLIGENT PERFORMANCE OF UNDERTAKING

## (GOOD SAMARITAN DOCTRINE)

### (Wells Fargo Bank, N.A., Americas Servicing Company (ASC)

### Deutsche Bank National Trust Company, Trustee))

160.     Plaintiff repeats and realleges every allegation above as if fully set forth herein.

161.     Defendants indicated multiple times that loan modification options were available to Plaintiff, and that they wanted to help Plaintiff.  Defendants encouraged Plaintiff to apply for a HAMP loan modification, on at least 4 occasions.

162.     Defendants routinely demanded information already in its files.

163.     Defendants made inaccurate calculations and determinations of Plaintiff's eligibility for dual loan modification and assumption programs, including the HAMP program.

164.     Defendants failed to follow through on written, verbal and implied promises, including without limitation the time frame at least 60% of the time within which Plaintiff's loan modification package would be processed.

165.     Defendants refused to process Plaintiff's modification packages in a timely manner and acknowledge documents received, resulting in a declination of a loan modification, without valid cause, followed by a letter stating all documents had been received and the modification was in process.

166.     Defendants engaged in dilatory tactics, resulting in Plaintiff's delinquency being so great that he cannot reinstate the loan without time that is not available.

167.     Plaintiff relied on the Defendants to administer the loan modification program, and process applications for a loan modification, in a timely manner and with due care.

168.     Defendants knew that their loan modification services were necessary for the protection of Plaintiff's Property.

38

169.     Defendants failed to exercise reasonable care in the administration of their loan modification program.

///

170.     Defendants' failure to exercise reasonable care increased the risk of harm to Plaintiff in the form of risk of foreclosure by luring Plaintiff into default and then failing and refusing to grant a permanent loan modification in 2013, 2014, 2015 and 2016, and failing and refusing to exercise reasonable care in the processing of the multiple loan modification applications Plaintiff sent to Defendants, as well as economic harm as described below.

171.     Defendants' negligence in administering its loan modification program has resulted in economic harm to the Plaintiff in the form of late fees, principal and interest accrual, retention of loan modification companies, attorney's fees and costs, negative amortization of the Loan, the need to liquidate personal assets to stop an illegal foreclosure.

172.     Plaintiff is entitled to damages and equitable relief from the Defendants as a result of their negligent administration of their loan modification program, including but not limited to, a permanent modification of the Loan.

**COUNT SIX**
**NEGLIGENCE PER SE**
**(Deutsche Bank National Trust Company, Trustee,**
**QLS, Wells Fargo Bank, N.A., ASC)**

173.     Plaintiff repeats and realleges every allegation above as if fully set forth herein.

174.     It was know that MERS and Deutsche Bank National Trust Company were not and could not be a true beneficiary under the DOT with legal authority to assign the DOT.

175.     Defendants knew or should have known that the Loan was purportedly

placed into the Trust in 2006 before its Closing Date.

176.    In allowing, acquiescing in, or sending the First, Second, Third and possibly even more Assignments, the First and possibly Second Substitutions and the NTS to be recorded at the Maricopa County Recorder, which contained unauthorized signatures and groundless and false information, these Defendants violated A.R.S. § 39-161 and A.R.S. § 33-420.

177.    QLS did not receive a writing from the Note Holder/Lender, declaring a default and electing to foreclose the DOT.

178.    QLS, MERS, were not and are not the agents of the Lender.

179.    Deutsche Bank and or Wells Fargo Bank, N.A. or A.S.C nevertheless allowed QLS to sign the First Substitution and initiate a Trustee's Sale by recording the NTS or allowing or causing the NTS to be recorded.

180.    Each of these statutes was put into place for the specific purpose of protecting homeowners' interests in their homes, and the specific purpose of ensuring that individuals who sign important legal documents are actually authorized to do so.

181.    Plaintiffs are in the class of persons for whose protection these statutes were put into place.

182.    Acts in violation of these statutes constitute negligence per se.

183.    Violation of A.R.S. § 39-161 is a Class 6 felony.

184.    Violation of A.R.S. § 33-420 carries statutory damages of not less than $5,000 per recorded document or treble the actual damages, whichever is greater, plus attorneys' fees and costs.

185.    Plaintiffs seek an order of this Court that MERS and QLS or ASC prepare and record any and all documents needed to clear the cloud on Plaintiff's title related to their recorded documents.

186. Plaintiff suffered and will suffer damages due to the negligence per se of MERS and QLS or ASC, in the form of clouded title to the Property, statutory damages under A.R.S. § 33-420, acceleration of the Note, damage to credit, accrual of late charges, fees,

costs, trustee's fees, attorney's fees, and other damage.

## COUNT SEVEN
### UNCONSCIONABLE CONTRACT/CONDUCT
**(Deutsche Bank National Trust Company, Wells Fargo Bank., N.A. )**

187.     Plaintiff repeats and realleges every allegation above as if fully set forth herein.

188.     Deutsche Bank National Trust Company, Wells Fargo Bank, N.A., successors and assigns, in placing 82-year-old Melvena Alexander, an unmarried woman into an Adjustable Rate Variable Note beyond her means.

189.     The Note contains unconscionable terms, such as a provision that payment of each monthly payment in full would result in an unpaid principal balance remaining the same for two years would not diminish.

///

190.     These unconscionable terms were not explained properly to Mrs. Alexander and caused unfair surprise. She did not understand that making the suggested payment would result in lack of decline in the principal balance every month.

191.     Mrs. Alexander died of dementia five and a half years later, and during the time lacked increasingly the mental capacity to enter into or deal with the Note, or understand its convoluted and unconscionable terms, especially when seeking assistance for modification which took three years to accomplish initially.

192.     Deutsche Bank National Trust Company, and Wells Fargo Bank, N.A. and its agents, successors and assigns, engaged in, and are engaging in, bad faith and inequitable, oppressive, and unconscionable conduct in placing Melvena Alexander and later Dennis Alexander in this loan, and in continuing to attempt to enforce, and foreclose pursuant to, this loan.

193.     Deutsche Bank National Trust Company, Wells Fargo Bank., N.A. and its

41

1  agents, successors and assigns, in seeking foreclosure, are subject to the principles of
2  equity.

3  194.    He who seeks equity must do equity.

4  195.    Due to the unconscionable behavior of these Defendants, and the
5  unconscionable nature of the Note, the Note is unenforceable, and void.

6  196.    Defendants may not foreclose in seeking to enforce the Note, which is void
7  for unconscionability.

8

9                              **COUNT EIGHT**

10

11  **WHEREFORE**, Plaintiff requests the following relief:

12  A.      For a declaration and/or an Order that the Assignments, Substitutions and
13  NTS, as well as the DOT which is now a nullity, are void and must be cancelled/revoked
14  with recordings at the Maricopa County Recorder's Office;

15  B.      For a declaration and/or Order that no Defendant is the Note Holder/Lender
16  and true beneficiary, that no Defendant may initiate or conduct a trustee's sale of
17  Plaintiff's Property, and no Defendant has standing to enforce the Loan;

18  C.      For damages sustained by the Plaintiff as a result of the Defendants'
19  breaches of contract, and breach of the duty of good faith and fair dealing;

20  D.      For damages sustained by the Plaintiff as a result of Defendants' negligence
21  per se;

22  E.      For an Order that all recordings against title after the DOT itself be
23  revoked/cancelled/rescinded under A.R.S. § 33-420, and for statutory damages of not less
24  than $5,000 per recorded document or for treble the actual damages, whichever is greater
25  and $1,000 or treble damages whichever is greater against the Defendants named in Count
26  Four;

27  F.      For damages sustained as a result of the Defendants' Negligent Performance
28  of an Undertaking and for the equitable relief of a permanent loan modification;

42

G.    For a ruling that the Note is unconscionable and thereby unenforceable and the DOT must be released;

I.    For judgment for Plaintiff's attorney's fees and costs incurred, pursuant to A.R.S. § 12-341.01 and A.R.S. § 33-420(A);

J.    For any pre-judgment interest to which Plaintiff is entitled;

K.    For interest on the reasonable attorney's fees, court costs, and other costs of collection at the highest legal rate from the date of entry of judgment herein until paid in full; and

L.    For such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury as a matter of right.

DATED this 8th day of August, 2016.

DENNIS R. ALEXANDER (Pro Se Plaintiff)

By: _____
Dennis R. Alexander
6564 Smoke Tree Lane
Paradise Valley, Arizona 85253
*Pro Se Plaintiff*

ORIGINAL filed this 8th
day of August, 2016, with
COPIES delivered
:

The Honorable Judge John Hannah
Maricopa County Superior Court
Northeast Regional Center

_____
_____
_____
_____
Phoenix, AZ _____
*Attorneys for Defendants*
*Deutsche Bank National Trust Company, Trustee;*
*QL; Wells Fargo Home Mortgage, ASC a D.B.A.*


c/Barbara J. Forde_____

44

**EXHIBIT B**

1  Adam E. Lang (022545)
   Jenny J. Winkler (019032)
2  SNELL & WILMER L.L.P.
   One Arizona Center
3  400 E. Van Buren
   Phoenix, AZ 85004-2202
4  Telephone: (602) 382-6000
   alang@swlaw.com
5  jwinkler@swlaw.com
   Attorneys for Defendants
6  Wells Fargo Bank, N.A. and Deutsche Bank National Trust
   Company, as Trustee for First Franklin Mortgage Loan Trust
7  2006-FF11, Mortgage Pass-Through Certificates, Series 2006-FF-
   11

8

9        **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

10            **IN AND FOR THE COUNTY OF MARICOPA**

11  Dennis R. Alexander, a married man,
    as his Sole and Separate Property, and as     No. CV2016-054041
12  Personal Rep for the Estate of Melvena
    Alexander,                                    **NOTICE OF REMOVAL**
13
                         Plaintiff,               (Assigned to the Honorable
14                                                John Hannah)
    v.
15
16  Deutsche Bank National Trust
    Company, as Trustee for First Franklin
17  Mortgage Loan Trust 2006-FF11,
    Mortgage Pass-Through Certificates,
18  Series 2006-FF11; Quality Loan Service
    Corporation, a California Corporation,
19  Wells Fargo Home Mortgage, Inc.,
    D.B.A. America's Servicing Company;
20  John and Jane Does 1-1000, XYZ
    Corporations 1-15, ABC Limited
21  Liability Companies 1-15, and 123
    Banking Associations 1-15,
22
                         Defendants.
23

24
        Defendants Wells Fargo Bank, N.A. (improperly named as Wells Fargo Home Mortgage,
25
    Inc., d/b/a America's Servicing Company) ("Wells Fargo") and Deutsche Bank National Trust
26
    Company, as Trustee for First Franklin Mortgage Loan Trust 2006-FF11, Mortgage Pass-
27
    Through Certificates, Series 2006-FF11 ("Deutsche Bank"), provides notice of removal of this
28

24718662

action from the Superior Court of the State of Arizona, in and for the County of Maricopa, to the United States District Court, District of Arizona. A copy of the Notice of Removal filed with the United States District Court for the District of Arizona is attached as Exhibit 1. Pursuant to 28 U.S.C. § 1446(d), this Court shall proceed no further with this action.

DATED this 1st day of September, 2016.

SNELL & WILMER L.L.P.

By /s/Jenny J. Winkler
Adam E. Lang
Jenny J. Winkler
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
*Attorneys for Defendants*
*Wells Fargo Bank, N.A. and Deutsche Bank National Trust Company, as Trustee for First Franklin Mortgage Loan Trust 2006-FF11, Mortgage Pass-Through Certificates, Series 2006-FF-11*

**ORIGINAL** of the foregoing
e-filed this 1st day of September, 2016
with the Clerk of the Court.

**COPY** mailed to:

Dennis R. Alexander
6564 Smoke Tree Lane
Paradise Valley, AZ 85253-4128
energyproducers@aol.com
*Pro Se*

Paul M. Levine, Esq.
McCarthy & Holthus, LLP
8502 E. Via De Ventura, Suite 200
Scottsdale, AZ 85258
plevine@mhlevine.com
*Attorney for Defendant Quality Loan Service Corporation, a California Corporation*

/s/Jennifer Thomes

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

- 2 -

24718662